Thank you, Judge Ruff. We'll call the first case, Hernandez v. Palakovich. Good morning, and may it please the Court. My name is Enrique Armijo. With me at Council's table is Bob Long, and we represent the appellate, Mr. Claudio Hernandez. We'd like to reserve three minutes for rebuttal. It's fine. We want to argue three points this morning. First, that the rule and not the exception of the Stackhouse case applies here, and therefore the District Court's misapplication of that case constituted an abuse of discretion. Second, neither the rule nor the reasoning of the Palace v. State Farm case are applicable to affirm the District Court's holding on alternative grounds. And third, as to the merits, the allegations in Mr. Hernandez's complaint against all three sets of defendants are sufficient to survive a motion to dismiss. You might, even before going into those points, touch on the question of jurisdiction, because as you know, the complaint was dismissed in this case without prejudice. So under Borelli, don't we essentially have no jurisdiction? Your Honor, we believe that at least two of the Borelli exceptions apply to this case. It's true that the District Court dismissed without prejudice, but the District Court directed the clerk to close the case. We believe that under the Garber v. Lago case, 352F3rd, that makes this an appealable order. We also believe that Mr. Hernandez has chosen to stand by his complaint. In his briefing, he's referred to the District Court's order as final and is resolving all of his claims. He's argued the legal and the factual sufficiency of that complaint. He's made no reference in his briefing to an amended complaint. We therefore believe that the order is final and appealable. Well, without prejudice, what did you understand that to mean? Well, Your Honor, we believe that 1291, based on the relevant Supreme Court precedent, should be given a technical and not a practical construction. Mr. Hernandez believed that to mean that this order was final and that the District Court was resolving all of his claims and that the clerk was directed to close the case. Under the circuit's precedent, we believe that makes this a final order. I think you would say that we have to disregard the without prejudice term and consider this a terminated case. Yes, Your Honor. Is that your view? Well, Your Honor, as I said, we believe that Borelli does not apply, and we also believe that the language in Borelli that this Court has applied regarding whether or not the District Court gives the plaintiff states in the opinion that he should be given an opportunity to amend should apply with the particularity of this case because Mr. Hernandez is a pro se plaintiff. Well, let me ask you something about Borelli. That's a 12B6 dismissal, right? I believe so, Your Honor. Okay. What was the basis of dismissal here? The basis of the dismissal here was based on what? It's 41B, right? I mean, the Court said failure to prosecute in essence by citing 41B. It did, Your Honor. Is that a distinction that's meaningful here? I mean, does that distinguish Borelli in any way in your mind? Well, Your Honor, we believe that if this Court chooses to consider the dismissal below as a failure to prosecute under 41B, the rule in this circuit is clear, is that under a 41B dismissal, the District Court below must consider and balance all six of the palace factors. And here the Court didn't even mention palace, let alone balance any of the factors. This Court has stated as recently as November of last year in an opinion by Your Honor called Lankanau Hospital v. Richard that the District Court should balance all six of the palace factors. Where a District Court is entering a sanctioned dismissal and palace applies, before the District Court dismisses, it's required to make an explicit finding and balancing of all six of the palace factors. Now, you said in your briefing that I think that you didn't think palace applied here. Did I misunderstand you? No, Your Honor. What I meant was that it doesn't apply in the context of 12B6 motions. The Anchorage Associates case, which the Stackhouse Court applied, said that palace does not apply in the Rule 56 context because Rule 56, quote, a summary judgment dismissal under Rule 56 is, quote, not entered as a sanction. And this case, correct me if I'm wrong, the District Court judge, Chief Judge Cain, cited 41B in dismissing, correct? She did, Your Honor. And what we're arguing now is that if this court chooses to treat this as a 41B dismissal, it must also remand because the rule – That's where you're hanging me up when you say if we choose to treat it that way. How could we treat it any other way if that's the way the District Court treated it? Well, Your Honor, it could – you could – I suppose this court could treat it as a 12B6 dismissal and state that – what logic is there in our saying, oh, no, you didn't – you may have said 41B, but we're treating it as something else. Why would we do that? Well, Your Honor, the District Court's opinion says that the case is dismissed for – that the 12B6 motions would be granted and that the case would be dismissed for Mr. Hernandez's failure to comply with the court order. Under that analysis, we believe that the dismissal was an error for failure to reach the merits. Now, as Your Honor is saying, this court can treat – this court can look at the opinion below, state this was a 41B dismissal for failure to prosecute. But the motion itself was a 12B6 motion. Yes, Your Honor. All three motions were 12B6 motions. That's what you were addressing. Yes. You were involved in the case, actually. Right. That's what you were addressing on appeal. Yes, Your Honor. But what we're saying is that the dismissal – if it – under either scenario, how this case – this court would choose to read the case. Under a 12B6 dismissal, the dismissal was an error for failure to reach the merits. We think that is the clear rule of Stackhouse. Under 41B, the dismissal was also an error because this court has clearly stated that in order to dismiss as a – dismiss a case as a sanction under Rule 41B for failure to prosecute, the district court below must reach all – reach all six of the palace factors and balance them. In U.S. versus $8 million, in U.S. currency, 330F3rd, this court said, quote, we have always required consideration and balancing of all six of the factors by the district court. In palace itself, this court said this court will be guided by the manner in which the trial court balanced the factors. Under this court's precedent, a remand is required when the district court balanced – when the district court dismisses for failure to prosecute as a sanction to the plaintiff. It's – under this court – under this circuit's precedent, the district court must reach all six of the palace factors. Now, the district court here did not reach any of the palace factors. Your Honor, the district court did not even mention the palace case. Nor did it reach the merits of the case under 12B6. It did not, Your Honor. And under our Stackhouse decision. That's accurate, Your Honor. So what is your – if you had your druthers, what would your request in this case be? Your Honor, we believe that in the district courts, the language of Stackhouse has been – has been interpreted inconsistently. We believe that the language in Stackhouse that tells – that says that a 12B6 motion can be dismissed without reaching the merits if a plaintiff receives, quote, specific direction to comply with the local rule from the court. We believe that that – that that language cannot mean what was given in this case. We believe that this – this court – Well, wait a minute. Wasn't he given specific instruction that you have to respond to the motions? Your Honor, he – Was he told in the direction of the court? And wasn't he told in the pretrial order? He was, Your Honor. He was given – as you said, he was given – when he filed his complaint in August 2005, he was given the standing practice order that referred to Local Rule 7-6. He was also granted a motion of extension of time that told him that he had to respond to the motions to dismiss by a date certain. But we believe that language in Stackhouse means a specific direction to comply from the local – with the local rule. Now – Do you want to give me – give us the language that you think would have – would have satisfied? Well, Your Honor, Judge Rambo in the Middle District has struggled with this language, and she has said she – she – and Mills v. Martinez, she had given the pro se plaintiff a direction to comply with the – a direction to reply to the motions to dismiss by a date certain. She made a specific statement that the court will dismiss without a merits analysis if no reply – if it doesn't reply under the local rule. That was not the case here. But we also believe, Your Honor, that this rule is particularly – this interpretation that the defendants have put forward is particularly harsh as to pro se plaintiffs. We believe the better course would be for this court to say that when faced with a 12b-6 motion and a pro se plaintiff, that the district court should reach the merits of the 12b-6 motions before dismissing. Is it your request that we reach the merits, or is it your request that we send it back for a merits consideration by the district court? Well, Your Honor, we – what our precise arguments as to the merits are that they're – that the district court should consider them in the first instance and that they're not available to this court to affirm on – to affirm the district court's dismissal on alternative grounds. So your request is for a remand for consideration of the merits of them? Yes, Your Honor. Are you in this case for the long ride? Your Honor, our arrangement with the circuit is that we – our engagement letter with Mr. Hernandez states that we are his attorneys for the purposes of this appeal. Oh, all right. So if the case goes back, you're – unless you get reappointed, you're out of the case. Well, that is still to be discussed, Your Honor, but – All right. Too quickly. I know that your time is out. If it were to be reversed and remanded for merits consideration, what happens to the state law claims? What's your position on that? They weren't raised in this appeal. Your Honor, we think the law in the circuit is clear, that state claims are not waived if they're not argued on appeal. In one of the merits cases that we discussed in our brief, White v. Napoleon, the – none of the briefing discussed the state law claims, and this Court still said that the district – that the ancillary state law claims are properly before the district court on the remand. All right. Now, isn't your pro se – the pro se issue that you raise alleging that Stackhouse isn't sufficiently clear to make the notices sufficiently clear to a pro se? Isn't that, though, in your brief anyway, in your position, further complicated by the language problem that your particular client had? Because aren't you really asking us to look at this not just as a pro se, but as someone who is not capable of addressing English in these pleadings? Yes, Your Honor. We – the fact that Mr. Hernandez did not respond to the 12B6 motions in time, we think that it's clear under this record that it was not because it should not have been deemed as a concession. And what your – the facts that Your Honor is pointing to are evidence in support of that. Whether or not this Court should adopt a different rule for pro se plaintiffs based on their language abilities or whether or not they can speak English, we don't have a position on that, Your Honor. But we do think that the pro se – that where a district court is faced with a pro se plaintiff who has not responded to a 12B6 motion, the proper course would be to reach the merits of that motion. Let me ask you as a follow-up question. I was surprised that the decision to deny him counsel was not appealed. Was that your decision? Well, Your Honor, we did not – that's correct that we did not appeal the denial of motion of counsel. We pointed in our brief some of the problems that we thought – some of the problems that that decision had. But we believe if Mr. Hernandez were to proceed, in this case were remanded, we would either advise him or assist him in filing a new motion for assistance of counsel. Okay. Mr. Amijo, thank you very much. Thank you, Your Honor. I'll get you back on rebuttal. Mr. Jamin. Good morning. Aaron Jamin on behalf of Appellee Holy Spirit Hospital. I respectfully submit that the district court's dismissal of Mr. Hernandez's pro se complaint was correct and not an abuse of discretion. That's argument number one. Number two, on the merits, I respectfully submit that plaintiff's complaint would not survive a motion to dismiss. Let me ask you about the second part of your argument first, if I might, Mr. Jamin. Assume for the sake of argument that we weren't inclined to agree that dismissal was the right thing in the first instance here as a sanction. Because this is a sanction, right? I mean, you look at it, she said you didn't comply with the local rule, you're out. Didn't look at the merits, didn't look at anything else. It's a sanction, right? I would agree. Okay. So it's out on a sanction and we think, well, that's not the right way to do it. Your argument is, well, look at the merits, he still loses. How do you square that argument with this court's, well, let me ask it this way. Why would we look at the merits in the first instance? What makes it a better proceeding to have this appellate court do that analysis before the district court has done it? I think this court's pretty much in the same position as the district court. We have a complaint. The complaint was attached as an exhibit. That's what the district court would be looking at and making a decision on, and that's what this court would be doing as well. I think there's three solid grounds why, if this court would look at the case on the merits, it would not survive. I think it's quite clear with respect to Holy Spirit Hospital. Holy Spirit Hospital was not a state actor, was not acting under the state color of state law at any time. The case is cited by the plaintiff's counsel in their brief. Wait a minute. So you want us to look at the merits, but you look at his complaint. I mean, it was really inartfully put together, clearly. But he did say that the actors generally committed negligence, resulting in my injury. Why isn't that enough as a broad statement of a claim against all defendants? Well, with respect to the negligence claim, well, constitutional violation arises under the Eighth Amendment, the deliberate indifference to a serious medical need. Certainly what Holy Spirit Hospital did, the surgery, cataract surgery was performed at Holy Spirit Hospital. There were several follow-up visits at Holy Spirit Hospital as well. Plaintiff's complaint, there's no allegations in the plaintiff's complaint whatsoever what Holy Spirit Hospital did wrong. If we agreed that the dismissal was improper under any of the grounds that we have discussed this morning, wouldn't it make sense for the case to go back for perhaps the filing of an amended complaint? Well, the statute of limitations has now run, and if it goes back, again, I don't think it could survive a motion to dismiss. An amended complaint would relate back, wouldn't it? It would. I don't see how there would be substantial change into it. We're talking about a negligence claim. The plaintiff was required to file a certificate of merit in support of his negligence claims. In Pennsylvania, there's very specific rules governing professional liability claims against hospitals. The rule 1042.3, which applies, says plaintiff, if represented by counsel or pro se plaintiffs, must file a certificate of merit within 60 days of filing his or her complaint. So on a merits analysis, you wouldn't have a problem. So what's the difficulty in the reversal and you facing that? Because the court below didn't do a merits analysis. She didn't address the failure of a pro se complainant who's in prison to have a certificate of merit. I think it would be prejudicial for us to go back now to the district court to have that decision. I mean, plaintiff's certificate of merit was due in October of 2005 to be filed. Now if we kick it back down to the superior court, the cost that Holy Spirit Hospital is going to incur when this case really doesn't exist anymore because a certificate of merit was never filed. I'm sorry. Is that your biggest argument on the prejudice grounds that it's going to cost you? No, it's not my biggest argument. It's one factor that a certificate of merit was never filed. I mean, I don't think. How can you say, Mr. Jamin, that the case doesn't exist because the certificate of merit wasn't filed when, in fact, the case doesn't exist because the district court dismissed it as a sanction? District court judge never said, hey, you didn't file a certificate of merit. Therefore, I'm dismissing. She looked at one thing. You didn't obey the local rule. You're told to. You're out. So isn't that the reason the case doesn't exist? Your Honor, I think what plaintiffs are asking you to do in any pro se case is that the rules don't apply to pro se plaintiffs. And in this case, there was specific direction by the district court, multiple warnings that Mr. Hernandez received the standing practice order applicable to all pro se plaintiffs, had a specific direction to file a response by a date certain of February 10th. He never filed another motion for an extension of counsel or another motion for appointment of counsel. How do you square dismissal with the repeated statements of this court that dismissal is the sanction of last resort, an extraordinary sanction? I don't think there were any other options available for the district court at this point. We have a date certain. Plaintiff was proceeding in form of operas. Generally, you can have monetary sanctions against people who don't respond in courts to pleadings. But what other alternative does the district court have if a pro se plaintiff or any plaintiff, for that matter, just does not respond by a date certain? Well, you know, actually, if he had a lawyer, all of these problems probably would have been avoided. That might have been a problem in the making. When the motion for counsel was denied. That was denied by a district court. I would think that would have helped you because you would have somebody to talk to. You would have gotten a little discovery. The case might have been addressed right on the merits. You might not be here today. Well, Your Honor, the district court, in their opinion, which denied appointment of counsel, was clear that based on the record that was in front of her at the time, it did not appear that Mr. Hernandez was incapable of proceeding with this matter pro se. But it seems to me to be clear that he was not the one who was communicating with the court. His name was on several documents, but he had a jailhouse lawyer who was filling out the documents for him and who told the court. That's the only evidence. I think that if we accept that as true, I think that opens a Pandora's box to many pro se litigants who have jailhouse lawyers that you'll be seeing these letters written all the time. We do see these letters written all the time. I think it opens a huge Pandora's box, especially in this case where I looked at the medical records. Mr. Hernandez signed all the documents. My time's up. Finish your sentence. There was no indication in any of the medical records that Mr. Hernandez had any problems or understanding or could not sign, could not understand medical treatment. I just think it's a giant leap to make an assumption on a jailhouse lawyer letter in this case. Thank you, Mr. Jamin, very much. Thank you. Ms. Kenyon. Good morning. Katie Kenyon on behalf of Dr. Ronald Long. To pick up essentially where Mr. Jamin left off, we obviously agree that the district court's dismissal of the case was proper and need not be remanded. We also have a separate argument that the complaint as pled by Mr. Hernandez lacks any merit as to Dr. Long. Supposing the district court had considered the fullest factors, what is your best argument for prejudice on the part of your client? Well, I think we have a similar prejudice argument that the hospital has. In other words, Dr. Long is going to have to continue to be a part of this lawsuit. He has issues with credentialing. He would always have to report this as a case hanging over his head. It has far-flung consequences when a doctor is named in a lawsuit. And I did not address Pulis in my brief, and I apologize, but I do believe that the prejudice to Dr. Long is immense, especially when coupled with the fact that Mr. Hernandez knew enough to ask for an extension of time the first time. He just did not do it the second time. There was nothing in Judge Keene's order that said this was the last time no further request for extension will be granted. Doesn't that actually rebut your colleague's point? I mean, one of the last things he said was, what else could Chief Judge Keene have done? It sounds to me like you're pointing to a thing she could have done, which was to say, okay, I'm giving you a further extension, but this is the last one. You know, put him on notice somehow that if he didn't perform, then the ax was going to drop. I don't think we want to put that type of burden on the district court to so respond to be granting pro se plaintiff's extension of time. If perhaps her final order had said no further extensions which will be granted, if Mr. Hernandez had taken the initiative to follow a further extension of time, then that would be a different story. He had the wherewithal, he had the knowledge of the English language and of the procedural system to ask for the extension the first time. He just chose to ignore the time. But didn't the first request come from the jailhouse lawyer? He signed the request. Right. But didn't the explanation come that I'm not going to have the assistance of this jailhouse lawyer anymore to make these requests even, the letters that were received? And I noticed in December of 2005 they might have crossed. But the real problem is you're talking about expedience to the district court. And at the same time, the expedience hasn't inured to anyone else's benefit. And it doesn't seem that it's a logical argument to say that on the lowest level where you're closer to the facts, that a judge in that circumstance can't hold a hearing or make a factual determination that somebody is capable of answering in English and answering the pleadings. Where is that in the record, that there was that kind of analysis? There is none. And I don't think appellant has challenged the decision to deny him counsel. So I think it's somewhat of a non-issue. There were no facts. Not as to deny counsel. That order clearly was not specifically appealed. But to deny the right to participate by entering the sanction is the ultimate sanction. And that was appealed. It is the ultimate sanction because he never filed any type of response. There was nothing to prevent him from sending a very simple letter. Judge, I don't understand. I need more time. He didn't even take back that. So is this the example of deleteriousness? Is this his history of deleteriousness? Is there anything else in the Pullis Factors that possibly applies here? If you look at all of them, even though you didn't deal with it in your brief, it's certainly something that you're supporting the district court on. Well, I think you have to look at the meritoriousness of the claim, which goes to our merits argument. The only allegation as to Dr. Long is that he referred Mr. Hernandez to a consultant. When you say that's the only allegation, if we're going to read this complaint liberally as we're bound to, since he frames his causes of action broadly, doesn't the allegation that there was a refusal to treat because he wouldn't sign a waiver, an allegation that sweeps Dr. Long into the way the complaint's written? I would say it does not. I think under Rule 8, while general notice pleading is permissible and accepted, this doesn't rise to that level. How can you say that in the aftermath of the Erickson case, that June 2007 case, that your opponents brought to our attention specifically, and where the Supreme Court emphasized that 882 pleading is something that needs to be particularly attended to when there's a pro se plaintiff involved? Well, if you look at Dr. Long specifically, there are no allegations or grounds on which to tie Dr. Long into this general theory. The only factual allegation, the only factual basis, is that he referred Mr. Hernandez to a consultant. He doesn't appear anywhere else in the timeline of events. It's unclear whether there are grounds to include or to drag Dr. Long into that general mess that he has pled. Let me just read you something from Count 1, for example, which names Dr. Long and then says, The defendants listed in the above count all knew of the obvious danger to the plaintiff if his medical and injury condition remained untreated, yet defendants failed to treat the plaintiff's condition in a timely manner. That's a quote, unquote. Now, you may say, as a factual matter, that's just wrong. He's lying. Dr. Long had nothing to do with it. But there he says Dr. Long knew, Dr. Long refused to treat, Dr. Long was, in effect, deliberately indifferent. So when you say there's nothing in there, how do we read that? He names Dr. Long, then he says that. How is that not 8-8? I think that's reading it too broadly. There's no allegation of direct personal involvement, which is required, in pleading a deliberate indifference claim. There's nothing that shows he had personal direction or personal involvement. There's just the general conclusory allegations. There's nothing to show that he had actual knowledge of what was taking place with Mr. Hernandez after the fact. So you think 8-8, as opposed to requiring notice pleading, where you say, you knew I had a problem, you refused to treat, you're deliberately indifferent, requires some more factual detail to say why you specifically didn't do it. Is that right? That's correct. You need to have some type of factual ground, some type of factual basis. Do you have a case, a Supreme Court case or a Third Circuit case that says that? Well, I think the Erickson case says it. I think in itself it acknowledges that you only need to give notice as to what claims are, but it still expects some type of factual basis or factual ground in order to plead a cause of action or a claim. But doesn't your argument turn Stackhouse on its head? If you allege that you need more specific pleadings from a pro se than not, isn't that exactly the opposite of what this Court has stood for? I don't think so. I don't think you need more specific with a pro se. I think a pro se is entitled to be given a much more lenient review of the pleadings, but there still needs to be some type of factual basis. In other words, Mr. Hernandez needed to state or needed to make that connection between Dr. Long having knowledge, acquiescence. You mean that Mr. Hernandez should have stated in his pro se complaint that even he didn't file, that Dr. Long somehow was involved in asking him to sign a waiver before he could have the needed operation? Is that what you're saying he had to say? Among some of the details, yes, because Dr. Long is not part of the Department of Corrections. And I repeat my colleague's question. Where is it in the law of this circuit or the U.S. Supreme Court or in procedure that that's required by any complainant? Well, I think personal involvement is directly required. I would point to the Brooks v. Beard decision where Judge Fuentes was on the panel and that even pointed to the issue that you raised about Mr. Hernandez refusing to sign the waiver so that he could have surgery. And I believe that decision found that that somewhat belied the pro se plaintiff's characterization of his medical need as serious and emergent. Ms. Kenyon, thank you very much. Thank you. Mr. Farrell. It's a pleasure to see you again. Nice to see you, Judge. Congratulations. My name is Bill Farrell. I represent the non-medical prison officials, the superintendent, the deputy superintendent, and the health care administrator. As Mr. Armejo pointed out in his brief, I conceded that there was, in fact, a 12B6 cause of action stated. What I did not concede was that it applied to my clients, that the dots were not connected. And let me answer your questions as to what case actually stands for that proposition. And I suggest to you that it's Spruill. And Spruill, in dealing, which was after the Austin v. Parker case, in dealing with the non-medical prison official. You're getting into the merits of the complaint, aren't you? I'm looking at the pleading. I'm looking at what Spruill was at 12B6. You're not conceding that the dismissal was proper, or are you? I'm not. Are you arguing that the dismissal was proper without looking at the merits? Because that's what happened. I think Judge Fuentes is saying, it sounds to me like you're doing it. Like you're going to the merits and you're going past the 41B issue. I am. And I'm suggesting under Paulus that there's a right for you to take a look at this case under Spruill and specifically affirm on all three grounds. Then under Paulus, you can tell me what the prejudice is to the institutional defendants? Candidly, the prejudice is only in the balancing of their rights. Why should they have to go through a motion for summary judgment or a trial if, in fact, at this stage, you can take a look at it under Spruill and say clearly that this is almost factually the equivalent of Spruill? Well, of course, if that were so, then every defendant in every case would be prejudiced because every defendant has an expense and has time to devote to a case and so forth. But not every defendant falls within Spruill and has the ability to show that the case should, in fact, be dismissed against them. Why should it be dismissed? Because it's identical with Spruill in the sense that in Spruill, the court said a month ago we opinioned and we opined in Austin v. Parker exactly what the requirement would be for a pro se inmate in their pleading standard. Nonetheless, with respect to the R.H. Lew Lieutenant Guler, that Mr. Spruill's complaint was not sufficient under 12b-6 because he did not show scienter. He did not plead enough facts to connect the dots between the R.H. Lew Lieutenant and the complaints, the medical complaints that he was talking about. Well, is it a distinguishing factor here that Mr. Hernandez alleges that one of the reasons he was denied treatment is that he refused prison officials' demands that he sign a waiver? Not something that requires medical knowledge or understanding. Sort of a straight up, I'm an administrator. To put a negative spin on it the way the plaintiff might, a bureaucrat tells me, sign this or you're not getting treatment. Now, if that's the allegation, doesn't that take it out of Spruill, which dealt with medical judgment and not with an administrative function like sign a consent or not? I think if that's the case, then you're almost looking at 8a as being something akin to a res ipsa. That if you simply say that this happened and that there are corrections officials involved in a corrections document. If you look at the operative language in Mr. Hernandez' complaint that deals with who it was or how this came about, he doesn't say that anyone particularly presented this particular form to him. What he's saying is he's saying who should be responsible. Mr. Ferrell, when you say it's a res ipsa, we're not talking about ultimate liability here. We're just talking about, in your argument, the merits, whether it survives a dismissal or not, whether he ever gets heard on it or not. I don't mean to say that the ultimate liability. I'm saying that if you take the spectrum of being fact pleading, which does not exist, and whatever else is on the other end of that continuum, which does not exist in federal practice, you're drawing a line someplace, much like they did in Erickson and in Alston and in Spruill, as to where the limits of that are going to be, and in balancing necessarily the rights of the plaintiff with the rights of the defendants in this case. What I'm saying to you is that had Mr., much like Ms. Kenyon's argument, had Mr. Hernandez simply said, yes, there was a document that was presented to me, he knows who presented that document to him. It was not the superintendent or the deputy superintendent or the health care administrator. It was one of the staff. As he says, it was SCI Smithfield staff who presented that. There are 600 staff. Is that the waiver form standard procedure for the institutions when the maid is having surgery? It may be at the hospital. We don't have a waiver form. We're here because the plaintiff says that there is such a form. So for 12b-6 purposes, there is something that he's saying that was placed before him by someone specific. But we don't know who that is, if it was a doctor or if it was someone else. Now, isn't that the sort of thing that gets handled in a discovery setting and not by dismissing at the get-go? Except this court did not do that in Sproul. It let the RSU lieutenant out on the 12b-6 motion because not enough was pled to connect the dots between him and what was happening. I'm suggesting to you that the only way you get to my clients, the superintendent, the deputy superintendent, and the health care administrator, is through responding to the superior. Are they responsible, perhaps? Well, maybe a court would find that. But they are not the ones who presented the form. They are not the ones who are connected to the wrong that Mr. Hernandez states. We don't really know at this point, based on the pleadings, do we, Mr. Farrell, that they didn't direct it, that they didn't personally direct it in some way? We don't know that. So, again, isn't that something that discovery is supposed to address? I think it would, absolutely. You're correct. And all he had to do was simply name them. He knew who they were. He named them in the caption. He named them in the 1983 form, which talks about the parties, and he named them in each of the accounts. All of the defendants were listed. But when it came to the actual ultimate issue in this particular case, dealing with that particular form, if they did it, then, yes, he certainly could have named who they were. Your argument is based on our concluding that the judge's dismissal was improper, right? Yes. Because it's gone right to the merits. Now, do you see a problem in an application to file an amended complaint? Candidly, no. Okay. Mr. Farrell, I think your time is up. Thank you very much. Mr. Armijo, you have three minutes. We gave your adversaries a little extra time just in case you need a minute or so. We'll be brief, Your Honor. Just as to the merits, we'll start with the correctional defendants. I think our brief is clear as to why this case is distinguishable from the complaint in Spruill. These correctional defendants are in this complaint not because of their position or their status in the facility. These correctional defendants are in the complaint because Mr. Hernandez has alleged that they asked him to sign a waiver of causation before giving him a surgery that they knew he needed. Therefore, this is not the case of Respondent Superior. The Respondent Superior cases that the correctional defendants are attempting to rely on are not relevant. As to Mr. Long, as Judge Jordan stated, all that's required here is that Mr. Hernandez give Dr. Long notice of the allegations against him via a short and plain statement of relief. Mr. Hernandez has not simply alleged that Dr. Long referred Mr. Hernandez to the Holy Spirit Hospital for surgery. Mr. Hernandez has alleged that Dr. Long knew that the treatment that Mr. Hernandez was receiving at Holy Spirit Hospital was ineffective. Yet he did nothing to, with that knowledge, he still did nothing to ensure that Mr. Hernandez would receive the medical treatment that he needed. And finally, as to the hospital, Your Honor, for the reasons stated in our brief, we believe that the hospital's actions here clearly constitute state action. The cases that the hospital has tried to rely on are at the summary judgment stage, or dismissals at the summary judgment stage, or the facts as to the prisoner, the hospital, and the prison have all been found. Here Mr. Hernandez, as Judge Ruff has mentioned, has not had the chance to establish those facts. If this court were to decide to adopt a rule in this case, which we believe would be more appropriate for the district court to do, we believe that the Fourth Circuit in Connor v. Donnelly has adopted a rule which states that a private physician who treats an inmate off the prison grounds is still an actor for purposes of 1983. And that's consistent with the courts holding in West. If there are no questions. Mr. Armijo, thank you very much. You took this case on as an assignment, and of course the court appreciates your involvement in helping us out. Thank you. I thank you all. Very good arguments. Very difficult case. We'll take it under advisement. Thank you. For the next matter.